Judge Fleming,
dissenting from the foregoing, pronounced the following separate opinion.
Whenever I distent from a majority of the court, it *91 will perhaps be expected, and I think it incumbent on me, to assign some reason for my opinion; and the difference on this occasion being merely-' on a matter of practice, I shall briefly notice, that on the 2rth of February, 1806, Tidwell’s injunction was dissolved by the County Court of Westmoreland, on which he prayed an appeal, which was allowed him on the usual terms ; but it being from an interlocutory decree, not authorized by law, he could not prosecute it. By an act of assembly, passed the 20th of January, 1804, (ch. 29. sect. 4.) it is enacted that “ where an injunction is wholly dissolved in an inferior Court, the bill of the complainant shall stand dismissed of course, with costs, unless sufficient cause be shown against such dismission, at or before the second Court, let the same be monthly or quarterly thereafter s and it shall be the duty of the several clerks of the said Courts to enter such dismission on the last day of the terms aforesaid.”
It was the official duty then of the clerk of Westmoreland County to have entered the dismission of the bill on the last day of the same Court after the injunction was dissolved, no sufficient cause having been shown against such dismission. At the October Court following, Tidwell, finding the cause still on the docket, did what the clerk ought, ex officio, to have done-before; as it is highly presumable that two Courts, either monthly or quarterly, had intervened between February and October, when Tidwell dismissed his bill, and prayed an appeal (not from the dismission of his own bill, but) from the decree dissolving his injunction, which then had become final.
There appears some irregularity in the proceedings, but it was not the fault of the appellee; and, in cases of equity, I am not for adhering to rigid rules of practice j but would relax a little to obtain justice.
With respect to the merits of the cause, it appears to me that the decree directing an account to be taken of the guardianship of Rowzee is correct; First, because *92 tbe estate of his ward consisted of between thirty and forty negroes, and about 450 acres of good land : he was sent only two years to school from the age of fourteen, when Rowzee became his guardian, lived chiefly among his relations, was meanly clad, and had large sums of money to pay after he came of age, for necessaries whilst he was under the guardianship of his uncle Rowzee. Secondly, because the guardian (conscious, no doubt, that he had not done justice to his ward, but had neglect» ed his interests) showed great anxiety to have the ac» count of his guardianship settled, as \oon as his ward came of ages saying, at the same time, “ that he was fearful, unless he could get a settlement, that he should be greatly injured, on account of the property of his ward being considerably wasted during his minority.” Thirdly, because, after the settlement, (when or how it was made does not appear,) he took the bond of his ward for about 34/., but declared he never intended to receive any money on it; but only meant it as a bar against any claim which his ward might bring against him, as his guardian 5 and it is in evidence that great waste had been committed on T dweWs property, whilst Rowzee was his guardian. And lastly, because by our act of Assembly concerning guardians, orphans, &c. it is enacted, that every orphan who has an estate, the profits of which shall not be sufficient for his or her maintenance, shall be bound apprentice, &c. Upon these grounds, I am of opinion that the decree directing an account to be taken of the guardianship of the appellant’s testator ought to be affirmed: but a majority of the court being of a different opinion, the decree is reversed, and the bill of the appellee dismissed with costs.